All right. Micah Saub. Did I say that right? Close? Close? Okay. Bill, can you turn the audio up a little bit? It's Saub like Apple. Saub. Nobody can get it right. Hang on one sec. We've got to get the audio. I have no idea. RJ, you know how to turn the audio up? You can do it from there. Okay. Okay. Thank you. Good morning, Your Honors. I'm Micah Saub, representing plaintiff appellant Dr. Peter Bocek, and I'm joined by my colleague Dennis Chong. Your Honors, the issue in this case is whether the facts developed at trial support the district court's conclusion that there was no fiduciary relationship between Dr. Bocek and the defendants because the contract between them did not form an agency relationship. The trial court erred, Your Honors, because it looked solely at whether the contract formed an agency relationship. It has never been the law in the Commonwealth of Virginia that an agency relationship is formed solely by contract. To the contrary, case after case after case for well over 100 years has made it clear that a fiduciary relationship, excuse me, that an agency relationship is formed by the conduct and intention of the parties. The district court examined course of conduct evidence. I'm sorry, Your Honor, I'm having trouble hearing? The district court examined course of conduct evidence. The district court did not look at course of conduct evidence as it relates to the existence of an agency relationship. Instead, the court looked at whether there was a contract. The court used a contract analysis to try to determine whether there was that but it's not a contract that we're trying to form. What purpose would the district court have taken the witness testimony for? Well, we might ask. The district court, of course, the district judge didn't decide what testimony to take, but the reality is we, the lawyers, did that. But when the district court looked at the evidence, when we look at the decision, the opinion by the court, the focus, the judge's focus, was on whether there was the sort of... An agency relationship. I'm sorry? Whether there was an agency relationship. That was the sole purpose of the remand. It was the sole purpose of the remand, but that is not what the district judge looked at. The district judge, the language of the district judge's opinion makes it very agreement. The distinction between the sort of events, the language and activities that give rise to an agency relationship are very different from a contractual relationship. Let me give an example. Most agency relationships are established through contract. It may be true that many agency relationships are established. That may be true. I have no pony in that race. It doesn't matter. It's a logical starting point for the inquiry since these parties did, in fact, have a contract. Well, they did, Your Honor. The point might have some validity if they didn't have a contract, but they had a contract, and that would be the logical place for an agency relationship to be established. It is possible that a contract can form an agency relationship, but it has been crystal clear since Chandler versus Kelly in 1928, since Bloxham versus Rose the same year, that you do not need a contract to form an agency relationship. And frankly, Judge, the standard that we look at to determine whether there's a contract is very different from the law that we look at to determine whether there's an agency relationship. I'd like to read briefly from Chandler versus Kelly. The intention of the parties, it is true, must control. But that intention is gathered from what was actually done or agreed by the parties, not from what they may have privately meant or supposed they meant. Their private intention will not affect it. Now, that's a distinction from contract formation. This is one of many. The point is that we look at manifestation of assent, right? So Dr. Bocek goes to Mr. Amato and says, Mr. Amato, I would like your assistance. And Mr. Amato says, okay, fine. They may not have a contract. They may not have an agreement, for example, as it relates to compensation. In this case, there is an agreement. But in a hypothetical, perhaps we make this more hypothetical. An investor goes to a land broker and says, I just heard that old widow Smith is very ill and is in desperate need of money. And she owns that parcel on that prime corner of real estate. It's got to be worth $20 million. The district court took evidence. And part of the evidence related to the, I looked at the contract, of course you would look at the contract. But he also looked at the course of dealing between the different parties. And he looked for the indicia of an agency relationship, such as the right of the principal to control the agent. And he made findings which are subject to a clearly erroneous standard of review. It's your burden to prove this relationship. The district court, you act as if he didn't know what he was doing. But all of the, the proceeding below went to the terms of the remand. Your honor, this court held the last time we were here, that there were a few key facts, which if true, created a clear breach of fiduciary duty. Your honor held that there were duties that arose out of contract. And obviously there was that dispute under Augusta mutual and so on, which is not before us today, but the court was in agreement that there were facts, which if proved true would create a clear breach of fiduciary duty. And sure enough, your honor, those facts were all proved true. Therefore this court effectively gave the marching orders to the trial court. There were no facts in this case that required determination based on notions of credibility. Mr. Amato admitted that there was an agency relationship at the time he learned about the opportunity to purchase the business. He admitted that he admitted that he commenced the due diligence investigation in order to meet Dr. Bocek's needs because Dr. Bocek told him to do so. He admitted this during trial having so admitted it's irrelevant as I believe every court, every judge on this court on this panel has, has said it is irrelevant that Mr. Amato then attempted or did in fact terminate the contractual agreement because the agency relationship had been formed. There's no question as a matter of law, but that it formed an agency relationship partly because of the admissions by Mr. Amato. Since it is now clear that there was an agency relationship and that the business opportunity arose out of that agency relationship, it is equally clear that when Mr. Amato used the information that he gained from the agency relationship, that he was violating his fiduciary duty. There's no other way to read the facts. This is not a case in which the district judge had to make a determination of credibility. What did we remand for? Uh, the remand. If what you say was the case that could have been wrapped up as a matter of law on the earlier appeal. Well, the evidence was this. The case came to this court and apparently we thought it was factual because that's what the remand was for. Otherwise our capacities would have been the same as a district judge. You know, if you're right, that this was all undisputed, that there was only one inference that could be drawn from the facts, then that would have been wrapped up on the earlier appeal. There would have been no remand. It would have been held as a matter of law. That this was an agency relationship. But obviously the point of the remand was that we thought a good part of this inquiry was going to be factual. Your Honor, I do not, I do not believe that that is the reading that we would get from the decisions in this case. I believe that this case came to the court of appeals initially on a grant of summary judgment and that the court made the, the determinations it needed to address. In some regards there was obviously some dispute among the judges of the bench as to the role of Augusta Mutual. That became the locus of the decision. It may well be. In fact, frankly, I believed that the evidence was clear enough that we should be able to file a motion for summary judgment and prevail. The district judge didn't agree, but this case came to the court of appeals in the posture of summary judgment. And while perhaps the court could have said, well, the fact, the evidence is undisputed and therefore a judgment must lie for the plaintiff. The court didn't say that, but that doesn't change the fundamental facts of the case. Okay. Dr. Bocheck paid Mr. Amato and JGA associates for their services. It is incomprehensible that he would have done so without paying for services for himself, for his benefit. But there are lots of relationships where people pay without creating an agency relationship. You can pay a consultant. That's not an agency relationship. You don't have a right to control the consultant's behavior. Well, there's no universality there, Judge Wilkins. Someone's paying someone. There are all kinds of relationships in which people pay for services and they pay for consulting services or they pay for other services, but that doesn't necessarily create an agency relationship. Your Honor, all kinds of contracts involve exchanges of funds. Your Honor, in this case, Mr. Amato issued an invoice to Dr. Bocheck, which Dr. Bocheck issued an invoice. Mr. Amato charged Dr. Bocheck for the tasks necessary to acquire the business. Now, while I suppose it's conceivable that there may be circumstances in which a payment might be made without it being for one's own benefit. We know in this case, because the evidence demonstrates it, that Mr. Amato billed Dr. Bocheck for providing services associated with the due diligence and other tasks directly associated with the acquisition of this business. And Dr. Bocheck paid. He paid because he understood that he had engaged Mr. Amato to provide these services for his benefit. Mr. Amato understood that. It is true that Mr. Amato hid his secret intentions. He lied on numerous occasions to Dr. Bocheck regarding the status of the, of the, of the transaction. But what he said to Dr. Bocheck was clearly calculated to manifest his assent, to serve as Dr. Bocheck's agent. This court's opinion, both the lead opinion, judge Niemeyer's opinion, and I believe also judge Wilkinson, your opinion all made it clear that it was effectively undisclosed. It was undisputed, but excuse me, that it had been alleged, I beg your pardon, that it had been alleged that Dr. Bocheck brought the opportunity to JGA, that JGA and Amato were serving Dr. Bocheck when they began negotiating on Dr. Bocheck's behalf and when they commenced due diligence and that by using the relationship for his own benefit, he breached his duty. Is it a duty that arises out of contract or out of this common law duty, a fiduciary duty? That issue was resolved in the prior visit to this court. We know that the question before the court is whether there was a breach of fiduciary duty. There's only one answer to that question, your honors. Do you want to, you can keep arguing if you want to, but we'll have to take the time out of your flower. I'm perfectly happy to wait until my colleague has spoken. Okay. Let's hear from. Thank you. Just going to ask you. Good morning. And may it please the court. My name is Kristen can asky and with Mr. Mark Cummings, I represent the appellees, JGA associates and Joseph Amato. We're asking that the court defer to the district court's factual findings and affirm the dismissal of the remaining breach of fiduciary duty claim. The law does not presume that two parties intend to form an agency relationship. This is especially true when the parties have entered into a valid written contract that sets forth the parameters of their relationship and their obligations to one another. And the law also does not presume that two parties intend to form an agency relationship when they expressly declare their intent to memorialize any further relationship in a written contract. Agency is a consensual relationship and under Virginia law, an agency arises from the agreement or consent of the parties that one shall ask. Let's set aside that contract because after the contract was signed, Bocek learned that his former practices for sale and he told Amato that he asked him on it. I understand. He asked, he informed Amato about it and my question is doesn't the evidence show that thereafter Amato agreed to work on behalf of Bocek subject to Bocek's control? And the answer is no. He didn't agree to work on behalf of Bocek. It's twofold here. So the, that one question, he did agree to look into the practice and ultimately, and he checked with Bocek. What kind of documents do you want? Let's go this. He did the due diligence. What was he doing at that point? Was he working on behalf of Bocek? At that point he was fulfilling his obligations underneath the letter of agreement. And I think it's fair to say that. I asked you on my hypothetical to set aside the agreement. Okay. My question is, wasn't there a period of time that Amato was working on behalf of Bocek? And I don't think we can set aside that letter of agreement because at that time. I'm asking you to do so in my hypothetical. Well, he was working to fulfill his obligations for Bocek. We're talking about obligations and undertaking to work on his behalf to try to see if he can buy the business.  or Bocek. Well, and I think what he was doing, he was preparing financial documents. He was contacting the state. And what was he doing when he contacted the business? He was trying to obtain the financial documents. For whom? For, well, for himself. So he could prepare a proposal and do the evaluation for Bocek. And that's why it's kind of twofold. It needs to go. He was trying to get it to, so he could put together the, so he builds Bocek for acting on behalf of Bocek and purchasing the business. No, at that point it was all determined whether or not it was financially feasible and, and for whom he's not, he's not acting for himself. At that point in December in this, you know, the timeframe really does become important here in December when Mr. Amato first reached out to the estate to collect those documents, he was doing this to be able to put together this financial feasibility analysis. And it doesn't sound like much, but the court was able to look at it. And this document is worth its weight in gold. You know, the thing, the thing about agency relationships is courts are very reluctant to impose agency relationships on parties unless there's some very clear manifestation of mutual assent. And they don't do it just from the fact or contract. Now I've read a lots of contracts and they, those that establish agency relationships are very clear about it. They say the words agency. They're not many implied agency relationships for, for contracts over services. You take athletes, they hire agents explicitly. You take writers, they hire agents explicitly. People know how to establish an agency relationship. And they use the word so that there's no misunderstanding later on. And this is consistent with the two part test in determining whether an agency relationship exists. It becomes the main question is the intent of the parties. And did they intend to be controlled by the other party? And here the district court found a lot of evidence, an exorbitant amount of evidence to demonstrate that the parties had never established what type of relationship they were going to ultimately have. There were a lot of discussions about minority partners. And at one point, Bocek indicated he might not be able to finance the business at all because there was going to be some capital projection required and he was searching for an opportunity to be employed by this company. I think it's fair to say that the end goal for everyone was to have a relationship here. They hadn't defined that. They hadn't gotten that far down the street. But the evidence shows in January that Bocek was looking for employment. He had realized he might not be able to own the business. There was talks about them continuing on for years down the road as a partnership and co-owning the business. In the month of January, he was overseas and continuously stalling about money, about his ability to even be involved in the business. And there's been representations that Bocek told Mr. Amato that the reasons why he was fired or that Mr. Amato never asked. The fact is, and this was revealed at trial, Mr. Amato did ask and Bocek told them it was because his salary was too high and that they were arguing over a severance agreement. And he kept saying and kept stringing him along saying the severance deal should be wrapped up any day now. And so as far as there being, um, well, what do you say this is a joint venture? Well, I think even then there hadn't, that was one of the options. I mean, it may be a consulting relationship. It may be a joint venture. There may be some business partnership down the road, but I don't know that it, you know, established a relationship of control. It may have, but the whole point of control, whether somebody controls somebody's actions, that's got to be factual, at least in part. And, um, Bocek was well aware that JGA was not purchasing the business as an undisclosed purchaser and immediately going to transfer it to him. It was going to be in a situation where they were either potentially going to work together. And I think an important aspect of it is there could have been no relationship at all. It was, there was nothing ever, um, tied down. And this was not a scheme. And the evidence was really unveiled at trial that when they, when JGA and, um, Brian August went and did the, um, the site evaluation, that was a nightmare. That was not a, a, oh, we already knew this was going to happen. That was a nightmare because they had already spent a month and a half of their time, um, investing a lot of effort into this possible, um, venture with, with Bocek. And that was not an ideal situation where they had been scheming all along. And the judge was able, there were two witnesses. The, the appellant had the burden of proof on this issue. Um, and also a point to make too. At summary judgment last time here on appeal, appellant claimed and told the district court that there are genuine issues as to the party's relationship. Um, they didn't, there was no claim. Oh, there was absolutely an agency relationship. They admitted that there was a genuine dispute of fact as to the party's relationship at trial. Um, they had the burden of proof to establish the intent of the parties and, um, that one was subject to the other's control. And they produced two witnesses, Dr. Bocek and JGA. And the court was able to listen to the evidence and weigh the testimony. Evidence went toward intent. Number one, and the evidence went toward control number two. And that was, you know, there was the contract certainly didn't establish an agency relationship. So the matter was remanded for factual development of the two elements of an agency relationship, the intent of the parties and the factor of control. The district court takes evidence on intent and he takes evidence on control. And he comes up with factual findings that the burden of proving an agency relationship was not met. That's right. And that was the purpose of the remand. That is absolutely right. And the, um, the court found that Bocek and Amato consistently throughout were intending to memorialize their relationship in a written contract eventually. They weren't, not only were they not consenting to be an agency relationship, they didn't want anything between them to be binding until they had an opportunity to enter into a written contract. And as late as January 31st, 2011, um, Bocek wrote an email to JGA saying that his lawyers would be in touch and put in place, quote, a new partnership agreement slash contract between myself and JGA. Since the last thing we have was the agreement about development and financing of my own practice and related costs of the project. And he goes on to say, it seems now we have a pretty good idea how to go about the acquisition in terms of the price, the funding, namely the newly formed LLC and the partnership within. This does not establish an agency relationship at all. And in fact, in a previous email, um, they both acknowledge that JGA was not buying or planning to buy a practice on Dr. Bocek's behalf. JJ was going to buy this practice and hope that Bocek was going to be an active participant, um, in the practice once they eventually ended. And in December, when this was all unfolding, um, Dr. Bocek made it very clear that he might not be able to finance a practice at all. And the way that the whole entire relationship changed was when he said, what are my other options? Um, if I want to have my employment back. And that was when the mezzanine partner idea came up, the minority partner joining in, um, with another group. And so that's when the options started to change. And so if we're not under the letter of, of agreement and we need to look at the conduct of the parties, clearly demonstrates and the court was able to find substantial evidence that they, they had not agreed to what the relationship would be. I thought, uh, in reading the opinion, you can correct me, but, uh, I thought that the district court held only that the consulting agreement did not create an agency relationship. And the, and the court never made an independent finding that no agency relationship was created thereafter by the conduct of the parties. It didn't address that issue. The court may have repeatedly, the subject of each sentence was the consulting agreement does not create the agency. And, uh, you can point out to me where you think the court went beyond that, but, uh, that's where I'm reading the opinion. Well, and they, they look at the straw because there was the, you know, the letter of agreement, but then they turned to the straw purchase agreement and whether, no, no, I'm asking you what the district court held. And this is what the court said. As a matter of law, the consulting agreement does not establish an agency relationship between Bocheck and JGA or Bocheck and Amato for the purpose of allergy care centers. And then the court goes over the consulting agreements terms and points out that it did not address, uh, the, that the, the next page, the consulting agreement does not demonstrate the consulting agreement provided that services researching. It just goes on and explains, and then it quotes the consulting agreement. Importantly, the consulting agreement does not demonstrate that JGA intended or agreed to  And so it, uh, uh, Bocheck attempts to transform the consulting agreement into a factually unsupported straw purchase agreement. And all it, uh, addresses in the opinion is the consulting agreement. It never addresses the law that the conduct after it was learned that, that the practice was for sale, uh, that arguably, this is what they were arguing, that, uh, Amato was working on behalf of Bocheck, uh, under Bocheck's control. Well, and it's that section directly after that when he's saying, when the court is saying that they, um, look to change this letter of agreement into a straw purchase agreement. It's the straw purchase, um, we can say agreement theory, um, that is looking for that contract or a transformation of that contract by amendment. But it never looked at the independent facts that followed thereafter, uh, to apply the Virginia law, which it correctly recited, which is that the conduct of the parties can create a relationship that, uh, under which one acts on behalf of the other. Because what did happen here is Amato did go to represent Bocheck, the representatives of the practice, did ask Bocheck what documents should I get, did do the diligence and try to get those documents, and he was doing so on behalf of Bocheck's request to try, to look into purchasing. And that was never addressed by the district court in the opinion. Well, in the district court, when they're speaking of the straw purchase agreement, that's what they're, they are looking at the conduct of the parties and they, they, they discuss all the different relationships that the parties were looking into. And that discussion as to these potential relationships is examining the conduct of the parties, the emails, what their intent was. And that's what they do that they do in the straw purchase about what the, what the, um, purchase agreement. It's the argument the court understood was that the consulting contract was to be interpreted as a straw purchase agreement. And the court said, it doesn't say that. And it quoted, well, the court was actually, um, clarifying that it wasn't there. So there was going to be one or two agreements that were the basis of the agency relationship. And that was the letter of agreement, the written letter of agreement, which we'll put aside or this straw purchase theory. And so they had to, I, they had to review the letter of agreement. There was no straw purchase theory. In other words, the court was looking for a contract, but it never looked to see whether, uh, asked, answered the question factually was a motto acting on behalf during this period of time, acting on behalf of Bocek, uh, under Bocek's control. Never asked that question. I'm not talking about a straw purchase agreement. But that, the straw purchase agreement, the idea that, um, Bocek and Amato agreed to, um, that, that JGA would purchase ACC on his behalf. That straw purchase theory is the theory of their agency. On behalf. In other words, my suggestion is there was discussions and efforts between Bocek and Amato. And the object was that Amato was now working on behalf of Bocek to do something. They were exploring what to do, but there is, it seems to me there's no question in the facts that during a period of time there, Amato was acting on behalf of Bocek to do something with respect to the former practice. And what he was doing was, was acting, um, to be able to get those financial documents so that he could put together a, a reasonable evaluation for Bocek. And so. Bocek on it and say, ask Bocek, what should I get? He didn't. He actually, he went out and got the documents that he needed to be able to put together his evaluation. And it wasn't when he asked what documents he should get. That was in mid January. Relationships that can lie on the borderline of things. And a lot of times people try to convert joint business ventures and of situations where, where two people are working together toward a particular goal, which is, which Bocek and Amato were as some kind of agency relationship. But that doesn't, you just don't imply an agency relationship on someone, which means you're subject to control, the breach of duty and everything. Unless the other party consents to this. And these kinds of things that lie on the borderline between joint ventureships and joint partnerships and agencies and everything. I suppose it's factual as to what is what it's just very hard for us to get into the particulars of the relationship from an appeal from, from the vantage point of an appeal, which is why we sent it back. So we could find out what the parties actually intended and what they were involved in. And, and on this appeal, the standard is the clearly erroneous standard. And so the question is whether or not in light of all the evidence, it was plausible that the district court could find the way they did. And they did correctly apply the law in reviewing the conduct of the parties, whether or not they had consented or agreed to any other relationship or any other scheme. It's the, the way that this case has gone, it's you have to be under the letter of agreement or you have to be under some other, some other relationship, some other agreement. There has to be a point where you have consented to, to, to go into a visit. And I, can I ask something apart from the question we've been discussing? What is the measure of recovery anyway? I mean, because you make the point that let's say this formal business of Bochex was purchased. You know, they're not going to hire him to, he's not going to be a salaried manager of this business because there's a no trespassing sign on, on Bochex. And, and he's, he was expelled from his, from the business because I suppose of fraud and sexual misconduct, or at least those were the allegations, whether they're true or not, I don't know. But so number one, does he even get back in the business given the, the prior history where they were dying to get rid of him? And number two, there was a lot of evidence that there was, that the business was unprofitable, that he wants lost profits, which I guess would be the measure of recovery. But the business wasn't earning anything. It wasn't a profitable business. So what would, I mean, even if someone were to disagree with you, what is the measure of recovery here? I see my time's expired, but I'd like to answer your question if I may. Now, Appellant, they're asking for a theory of recovery based on the lost revenue. And there's no theory of recovery that would entitle to Appellant, entitle Appellant to the lost revenue. And to the extent that they're looking under a loss, is there another theory of recovery here? Or is it purely one of lost revenue? It would be one of lost profit. And, well, that's really a speculative aspect. Exactly. Especially when the only evidence in the record is of loss, of, of losses here. And the reason being just, what about Estabrook's, uh, uh, Estabrook's report, which the district court didn't address at all. Well, and that was so, just addressed the tax losses, which of course includes depreciation, and amortization. Well, and that, that is the most reliable form of evidence, because it actually shows what the business was worth at that time. And I think specifically, um, there, well, Estabrook showed it was at a positive cash flow. Uh, in other words, the tax losses are created by depreciation. But you can have a, a, a, a very positive value under, under that. Well, the, the tax laws were, the reason for losses, and the reason for the losses was because, um, the evidence produced at trial was there had been in, um, incorrect, uh, not only tax, I think they had, were able to settle with the IRS for $80,000, but it was revealed afterwards that the practice had not been, um, had basically, uh, committed tax fraud. And also, they had, there was a random audit of one of their largest. Just my basic question, um, uh, Estabrook disagrees with that, and his, uh, report was not addressed by the district court. The, and I agree the district court did not address that report, but that's because the evidence that was actually produced at trial, the most, the real, um, true evidence that, that was tested, showed that the, the business was in losses, that there was no problem. That was one report, that was your report. I'm talking about, don't you, when you resolve facts, have to dispose of the facts, and, uh, there were reports, uh, that showed there was a loss on two different theories. Well, and I, the projection that was in, that was under the, uh, Estabrook's report, that was a projection that was so highly speculative, and it was proved even more speculative by the evidence that we were able to produce. And that was a, a report that, One was a differential in value at the time, uh, between one million and one million two, which, and your own man, uh, was trying to, uh, support that. He was trying to buy it for a million and then sell it back to, uh, uh, Bocek for a million two. And the million two, um, just to be, But I'm just, my question isn't to argue over the fact. Sure. My question is, it looks to me like the factual issue was never resolved, between Estabrook and your expert. Well, the, the court didn't, and maybe the court didn't specifically, um, dismiss Estabrook's report, but he was able to look at evidence to determine whether or not, um, there was any profit that was actually produced at trial. The, the most real evidence that the court decided was relevant to the calculation of damages was the current tax reports. And that was for when the business was for sale in 2011. And that became the most real and true depiction of, um, of the damages at that point. Okay. Thank you. Okay. Thank you. Reply. Thank you, your honors. It is conceded that the defendants were working for Dr. At trial question asked of Mr. Amato quote. And you also understood that what you were doing, you were doing it for Dr. Bojack, right? Answer up to a certain point in time. Yes. And you would be acting subject to his instructions and his directions, right? Answer up to a certain point in time earlier in the process. Yes. Once an agency relationship is formed, there is a fiduciary duty. As a matter of law, those two questions and their answers. Establish. Without any question that there was an agency relationship. So a consultant could be performing services. Or the, the, uh, person who is paying for those services. Well, the benefit of the person that's paying for the services, but that doesn't make it into an agency relationship. The fact that one person may be performing. Services for another. Well, judge the, the, the Supreme court of the Commonwealth of Virginia has held repeatedly. That an agency relationship is created. Anytime. One person endows another. To work on his behalf. Yes, but subject to his control, but there has to be. And the second person assents. Doesn't there have to be some consent? Of course there does. And there was in this case, there were numerous expressions. Of ascent. In fact. There is no evidence in the record whatsoever. That a motto. Ever communicated. To dr. Bojack. That he was not working on dr. Bojack's behalf. Either one of them communicated with each other. That is not true. Your honor. Yes, it is. You're making your client to some kind of saying he didn't even discuss his prior relationship. With. With G.J. G.A. He didn't have to. There was no obligation for him to do so. There is not an iota of evidence in the record. Your honor. That would support the notion. That this was a joint venture. I hear speculation. Maybe it was a joint venture. Maybe it was. Maybe, maybe it was. And that's why we had, but there's no evidence. Your honor out those facts. But there is no evidence. Your honor. At trial. No. Evidence. At all was presented. Which suggested that they had. A trial up here. No, I am not your honor. I'm telling you what was actually brought forward in the trial. We cannot reinvent the facts. You say there's no. Did the trial. Transcript. Say there's no duty on the part of a principal to be forthcoming with a so-called agent. Your honor. I'm not deal with each other in good faith. You're supposed to be open. If you, if you don't disclose things to an agent that ruptures the agency relationship. I do not believe that is a fair reflection of the law. Your honor. You conceal things from the agent. You sending the agent into the breach blind. Then perhaps you are a fool, but it does not destroy the agency relationship. The agency relationship is created. We know. The, the, the Supreme Court of Virginia has said far too many times for us to be reinventing the definition or the methods of creating an agency relationship. It has been, it has been held again and again and again. And the rice dropper case that we cited in our brief. Reiterates the same thing that has been said. Done on the earlier appeal. If it was done, as if it was all as clear as you say it is, oh, there's only one way to look at this. There's only one way to look at it. If that were the case, there was no need for the district court to go through what he, what he did in taking this testimony. He understood what it was, it was all about. And that was to examine the facts of what these parties were up to. Well, that's an interesting issue, your honor. Let me just point out by the way, that it was not us who remanded the case for trial. It was this panel. So I can't take responsibility for that. But. When we look at what the district court did. The district court held a trial, right? And it reached a conclusion. Okay. What did it do in reaching that conclusion? Did the district court. Make any measure. Of the men. In the dispute. Was there a credibility assessment? Is the question of credibility even present in this case? No, because there is no dispute here. Your honor, there is no, we do not know that. Well, we have the benefit of the trial transcript, your honor, and of the district judge's opinion. We can't just reinvent the facts. The facts are laid out before us. Two people are discussing the nature of their relationship. And you say there's no credibility dimension to that. That's right. That's not correct. You're saying that two people come before a district judge and they're talking about the nature of their relationship. And you just indicated to me. That that has no credibility component. The only. Aspect of this case. In which there might have been a debate over the facts. Was. What the features of the deal would look like. Okay. In other words, how do we achieve Dr. Bo checks? Aims and goals. We don't know. But that is irrelevant. As it relates to the question of the formation of an agency relationship. As it relates to the creation of an agency relationship, there was no question that required a credibility determination. Mr. Amato admitted that there was an agency relationship. I'm sorry, judge. I just can't be with you on that point. I would think. That where you're trying to talk about whether somebody has consented to something. And the consent. Is not manifest in the contract. And you're trying to talk about whether somebody's consented. And you're trying to talk about whether the intent of two people. Was it? One should control the actions of another, as opposed to being joint. Ventures or whatever they were. And you're sitting here and telling me. That. The two people who are most intimately involved and who testify. And who are before the court. And there's simply no credibility. Aspect to the case at all. That's what you said. Your honor. It's interesting. Many modern cases describe the question. Of agency as a question of fact. But. It has also long been the case that the notion of agency has been described as a question of law. Yes. And the reason your honor. Do describe it as a factual matter. Okay. But, but the point that I'm trying to bring out here. Is the point that arises. From the fundamental law governing the existence of an agency relationship. I quoted earlier from Chandler versus Kelly. That case made it clear. That it doesn't matter what secrets. Somebody holds in his or her heart. It doesn't matter that Mr. Amato was secretly plotting to benefit himself. Lying to Mr. To Mr. To Dr. Bojack. What matters is that he communicated to Dr. Bojack. That their goals were his goals in his. Email response. You may say. You know, there may be two scoundrels here. And there may be a road to recovery for you. I don't know. But the vehicle you have chosen. Of an agency relationship. Just doesn't seem to me. To be the right vehicle for recovery here. You can, you know, you can talk about a breach of contract. Or you can talk about this. Or you can talk about that. But to have the whole thing hinge. On an agency relationship. That's. There are other ways this case could have been approached. And most likely people go at it through a straightforward breach of contract claim. In this way or that way. And point to the provision in the way. But the problem I have is the vehicle here. Of an implied agency relationship. Seems to me. Not the road to recovery. Even if there are damages at the end of the road. Which I have. Which I question. Well, I appreciate the courts. Comments and I am happy to answer any further questions. I think we understand. Thank you, Judge.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Paul V. Niemeyer